**SIGNED this 2 day of November, 2016.**



_____
John T. Laney, III
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| In re: | * | |
| LINWOOD LOVETT and | * | |
| CAROLE LOVETT, | * | Chapter 11 |
| Debtors, | * | Case Number: 14-52614- JTL |
| | * | |
| WELLS FARGO BANK, N.A., | * | |
| successor by merger to | * | |
| WACHOVIA BANK, N.A., | * | |
| | * | |
| Plaintiff, | * | |
| | * | Adversary Proceeding |
| v. | * | Number: 15-05034 |
| | * | |
| LINWOOD LOVETT, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

On September 15, 2016, the Court held a hearing on what was scheduled as the Final Pre-Trial Conference for the adversary proceeding initiated by the Plaintiff, Wells Fargo Bank, N.A. ("Wells Fargo"), against the Defendant, Linwood Lovett ("Lovett"). The parties agreed that the

1

Court should dispose of the following issue as a matter of law before rescheduling and conducting the Final Pre-Trial Conference: whether Wells Fargo has standing to bring an action to deny the dischargeability of a debt under 11 U.S.C. § 523(a)(2)(A).[1] In accordance with a scheduling order entered by the Court on September 15, 2016, the parties submitted briefs, which the Court considered in reaching its decision on the issue.

## Factual Background

Lovett filed for Chapter 11 bankruptcy relief on October 31, 2014. On May 15, 2015, Wells Fargo filed an adversary proceeding under § 523(a)(2)(A) seeking to deny dischargeability of a debt owed to it by Lovett. Lovett is a lawyer and a former partner at the law firm Lovett, Cowart & Ayerbe, LLC ("LCA"). In 2000, Wachovia Bank, N.A. ("Wachovia") extended a $125,000 line of credit to LCA (the "line of credit"). Between 2008 and 2009, Wachovia made four cash advances on the line of credit (the "cash advances"). It appears that LCA ceased doing business as a law firm in 2009. On March 20, 2010, Wachovia merged with and into Wells Fargo, assuming the title of the latter. In its complaint, Wells Fargo alleges that Lovett personally obtained three of the cash advances on the line of credit in the total amount of $78,500 through false pretenses, false representations, or actual fraud. Specifically, Wells Fargo avers that the "Debtor took said advances when he knew that LCA did not have the ability to repay, or that LCA did not intend to repay, or that LCA was no longer operating, or that LCA was insolvent." (Compl. 7, ECF No. 1).

## Legal Analysis

Lovett contends that Wells Fargo does not have standing to bring its non-dischargeability action. The cash advances made to Lovett were made prior to Wachovia's merger with and into

---

[1] All statutory references hereinafter and not otherwise denoted are to Title 11 of the United States Code, which is referred to as "the Bankruptcy Code."

2

Wells Fargo. Lovett argues that any claim of fraud that Wachovia may have had against him regarding the cash advances is not assignable under Georgia law; therefore, Wells Fargo, as the assignee of Wachovia, does not have standing to bring a non-dischargeability action premised on actual fraud. Wells Fargo agrees that claims of fraud are not assignable under Georgia law but maintains that its action is not dependent on assignment. Wells Fargo argues that all of Wachovia's claims, including its claim for fraud against Lovett, became claims of Wells Fargo by operation of the merger between the two banks. The Court agrees with Wells Fargo for the following reasons.

Under the National Banking Act, the successor bank in a merger between national banks is deemed to be the same corporation as each of the merging banks, and the "corporate existence of each of the merging banks" continues in the successor bank. 12 U.S.C. § 215a.(e) (2012). Furthermore, "[a]ll . . . *choses in action* shall be transferred to and vested in the receiving association by virtue of [the] merger without any deed or other transfer." 12 U.S.C. § 215a.(e) (emphasis added). Black's Law Dictionary defines a "chose in action" as "the right to bring an action to recover a debt, money, or thing." *Chose*, BLACK'S LAW DICTIONARY (10th ed. 2014).

Section 7-1-536 of the Official Code of Georgia Annotated ("O.C.G.A.") describes the effect of a merger, share exchange, or consolidation of state banks and trust companies. O.C.G.A. 7-1-536 (2016). Under subsection (f), "[a]ny claim existing or action pending by or against any party to the plan [of merger, share exchange, or consolidation] may be prosecuted to judgment as if the merger, share exchange, or consolidation had not taken place or the resulting bank or trust company may be substituted in its place." O.C.G.A. § 7-1-536(f).

Section 14-2-1106 of the O.C.G.A. describes the effect of a merger or share exchange between business corporations. Under subsection (a)(1), [e]very other corporation or entity party

3

to the merger merges into the surviving corporation or entity and the separate existence of every corporation or entity except the surviving corporation or entity ceases." O.C.G.A. § 14-2-1106(a)(1). Under subsection (a)(4), "[a] proceeding pending against any corporation or entity party to the merger may be continued as if the merger did not occur or the surviving corporation or entity may be substituted in the proceeding for the corporation or entity whose existence ceased." O.C.G.A. § 14-2-1106(a)(3).

Under the National Banking Act and Georgia law regarding the merger of banks and corporations, the claims, existing or pending, of banks participating in a merger survive the merger and may be prosecuted by the successor bank. In *National City Mortgage Co. v. Tidwell*, the Georgia Supreme Court interpreted the National Banking Act and Georgia law and determined that "[u]nder both federal and state law, the merger of two banks does not affect any claim or action pending by or against them." *Nat'l City Mortg. Co. v. Tidwell*, 293 Ga. 697, 700 (2013). The court noted that National City Mortgage Co. and PNC Bank, the successor bank, were "deemed the same entity under federal and state law by virtue of their merger." *Id.* at 701. In *Jackson v. Bank of America, N.A.*, the Eleventh Circuit relied on *National City Mortgage Co.* to determine that the rights under a security deed vested automatically in the successor bank "without any conveyance, transfer, or assignment." 578 F. App'x 856, 861 (11th Cir. 2014) (quoting *Nat'l City Mortg. Co.*, 293 Ga. at 733).

As evidenced by the Secretary's Certificate, certified by the Assistant Secretary of Wells Fargo, and the Letter from the Office of the Comptroller of the Currency to the Senior Vice President of Wells Fargo, Wachovia merged with and into Wells Fargo, and the effective date of that merger was March 20, 2010. (Pl.'s Br. Ex. A, ECF No. 80). Under both Federal and Georgia law, Wells Fargo, as the successor bank in the merger between it and Wachovia,

4

acquired the right to prosecute or defend any claim existing or pending by or against Wachovia by virtue of the merger. Any fraud claim of Wachovia automatically transferred to and vested in Wells Fargo by virtue of the merger without any conveyance, transfer, or assignment. Therefore, the assignability of a fraud claim between Wachovia and Wells Fargo is not determinative of Wells Fargo's ability to bring a non-dischargeability action premised on actual fraud that may have occurred between Lovett and Wachovia.

## Conclusion

Under the National Banking Act and Georgia law, the right to prosecute a claim survives a merger between banks, and the successor bank may prosecute such a claim. Therefore, Wells Fargo has standing to bring its non-dischargeability action under § 523(a)(2)(A).